UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

GARY MITCHELL,
        Plaintiff,        Civil Action No.: 13-11620
                                       Honorable David M. Lawson
v.                              Magistrate Judge Elizabeth A. Stafford

JERRY CLAYTON,
*et al.*,

        Defendants.
_____/

**REPORT AND RECOMMENDATION THAT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [R. 52] BE GRANTED**

**I.    INTRODUCTION**

Plaintiff Gary Mitchell brings this action pursuant to 18 U.S.C. § 1983, alleging violations of his constitutional rights while he was detained at the Washtenaw County Jail.[1] The defendants now move for summary judgment. [R. 52]. The Court finds that there are no genuine issues of material fact, and recommends that defendants' motion be **GRANTED**.

**II.   BACKGROUND**

Mitchell alleges that defendants had a practice, policy or custom of deliberate indifference to his needs by failing to equip the cells in his and many other cell blocks with "emergency call buttons," causing him to suffer

---

[1] The Honorable David M. Lawson referred this to resolve all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), [R.40; R. 45].

from a migraine headache without treatment for upwards of two hours on February 4, 2013. [R. 7, PgID 41-42, 46-47]. In addition, Mitchell alleges a failure to receive the jail's grievance procedure upon request in accordance with the jail's policies, and an ineffectual grievance procedure that does not allow for an exhaustion of administrative remedies. [*Id.*, PgID 42-43, 46]. He contends that access to the law library is denied to inmates that are not currently representing themselves in a criminal case. [*Id.*, PgID 42-43, 46].

Mitchell claims that, while he was in the "J block," he was attacked on March 1, 2013 by inmate Anthony Turner and that Corrections Officer Carla Wilson demonstrated deliberate indifference by failing to do anything to stop or document the attack. [*Id.*, PgID 43-44, 47]. He alleges that that Sergeant Reiss later became aware of the incident but did not reprimand Officer Wilson for her actions or take any other action regarding the attack. [*Id.*, PgID 44-45, 47].

In a supplemental brief, Mitchell alleged that he was transferred to a "supermax" facility and given a major misconduct ticket as a result of alleged fighting during the March 1 attack. [R. 22, PgID 108-09]. A hearing officer found him guilty with mitigating circumstances, and imposed 5 days of lost privileges. [*Id.*, PgID 109]. He states that he was given a copy of the charges, but denied copies of other paperwork. [Id., PgID 109-11]. As

a consequence of these actions, Mitchell claims to have been denied due process without redress in the form of a hearing or appeal. [*Id*.]. Mitchell further alleges that he was attacked by an inmate who was *de facto* authorized as a "rockboss" by jail staff at supermax. [Id., PgID 108, 111].

The defendants now move for summary judgment, arguing that Mitchell's claims for injunctive relief are moot, that he cannot establish a substantial risk of harm or deliberate indifference as required for his Eighth Amendment claims, that he fails to state a claim based upon access to the courts, that he was not deprived of due process while incarcerated at the Washtenaw County Jail, and that his claims against certain defendants based on vicarious liability must fail.

## III. ANALYSIS

Federal Rule of Civil Procedure 56 provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a summary judgment motion,

3

the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986).

### A. Claims Arising from Migraine Headache

Mitchell raises a legitimate concern about the difficulty inmates in medical crises face while housed in cells without emergency call buttons. Nonetheless, he did not personally suffer cruel and unusual punishment under the Eighth Amendment as a result of having a difficult time getting the attention an officer for a period of forty minutes to two hours while he was suffering from a migraine headache. [See R. 7, PgID 41-42; R. 52-2, PgID 336]. The absence of an emergency call button does not constitute cruel and unusual punishment so long as the jail has systems in place for observation of the inmates. *Parsons v. Wilkinson,* 168 F.3d 490, *2 (6th Cir. 1998) (unpublished). Here, the jail had an observation system. [R. 52-3]. Further, Mitchell admits that a guard did in fact summon medical care when Mitchell was discovered to be in pain and that he was then provided with medication. [R. 52-2, PgID 335-36]. These allegations do demonstrate the type of "unnecessary and wanton infliction of pain" necessary to sustain a claim of deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

**B. Claims Arising from Grievance Procedure**

Mitchell alleges that he was denied a written copy of the jail's grievance procedures by Defendant Lieutenant Casey, and that this lack of information and the inadequacy of the grievance procedure were for the purpose of preventing an exhaustion of administrative remedies in order to keep inmates out of court. [R. 7, PgID 42-43]. The Court agrees that the communication Mitchell received regarding the grievance procedure was inadequate. However, "there [is] no constitutionally protected due process interest in unfettered access to a prison grievance procedure," so affirmative relief for an arbitrary grievance system is not available under § 1983. *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005).[2] Therefore, Mitchell's claim regarding the inadequacy of the grievance procedure should be dismissed.

**C. Claims Arising from Access to the Law Library**

The Court agrees with Mitchell that the jail's unwritten policy of only allowing inmates who already have a case to access the library could have the effect of denying inmates access to the courts. [See R. 7, PgID 45-46;

---

[2] Had the defendants alleged that Mitchell failed to exhaust his administrative remedies, Mitchell could have argued that he was denied a proper grievance procedure. *Hawkins v. Norwood*, 2010 WL 3398793, at *10 (W.D. Mich. Aug. 25, 2010) (citing *Lewis v. Casey*, 518 U.S. 343 (1996).

R. 1, PgID 14-19]. However, Mitchell acknowledged that he was able to access the courts despite the jail policy. [R. 52-2, PgID 337-41]. In order to state a claim for interference with access to the courts, however, a plaintiff must show actual injury. *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). "[T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Because Mitchell was able to file the complaint he "initially wanted to file," [R. 52-2, PgID 340], summary judgment on his claim regarding access to the law library should be granted to the defendants.

### D.  Claims Arising from Attacks by Other Inmates

As noted, Mitchell's complaint addresses an alleged attack by inmate Turner on March 1, 2013. [R. 7, PgID 43-44]. After Turner had fights with other inmates, Sergeant Reiss interviewed Mitchell on March 22, 2013 and reviewed the videotape of Turner's alleged assault on Mitchell. [R. 1, PgID 10; R. 52-3, PgID 383-86]. On April 10, 2013, Mitchell filed his complaint. [R. 1]. Yet, defendants failed to preserve the videotape, and have not offered an explanation for failing to do so or revealed whether the videotape was available at the time the complaint was filed. [R. 53, PgID 440].

"As a general matter, it is beyond question that a party to civil litigation has a duty to preserve relevant information, including ESI, when that party has notice that the evidence is relevant to litigation or ... should have known that the evidence may be relevant to future litigation" *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (citation and internal quotation marks omitted). Defendants' cagey statements that they are "not in possession or control" of the videotape and that the "video no longer exists" are troubling. [R. 53, PgID 440]. Additionally, it is unclear why jail officials waited until Turner allegedly assaulted several inmates before removing him from the J block. [R. 52-3, PgID 383-86]. The officials had an affirmative duty to protect Mitchell and other inmates from violence perpetuated by Turner once they became aware of his propensities to attack. *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir.1998); *Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir.2011).

However, Mitchell's deposition describes a brief altercation that was quickly broken up by other inmates [R. 52-2, PgID 343-46] and, most importantly, he does not allege that he suffered any injuries. As a result, he is precluded from seeking monetary damages from prison officials. 42 U.S.C. § 1997e(e); *Richmond v. Settles*, 450 Fed. Appx. 448, 453 (6th Cir. 2011). He further has no claim for declaratory relief under the Eighth

Amendment for past conduct. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-106 (1983); *Fieger v. Mich. Supreme Court*, 553 F.3d 955, 966 (6th Cir. 2009).

The foregoing analysis also applies equally to any claim based on the alleged assault by inmate Ellis while Mitchell was in supermax. [R. 22, PgID 108-09].

D.   **Claims Arising from Discipline**

Some of Mitchell's claims arise from allegations of discipline that involve a loss of commissary and visitation privileges without notice, hearing, or opportunity for appeal, and a transfer to administrative segregation or 'supermax' facilities following the fight with Turner. [R. 1, PgID 12; R. 7, PgID 45; R. 22, PgID 108-11; R. 52, PgID 325-26]. In order to state a claim for a violation of procedural due process, a prisoner must first allege the existence of a protected liberty or property interest. *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). With few exceptions, a prisoner has no protected liberty interest in his security classification or prison placement, as actions taken by prison to alter prisoner placement do not impose an "atypical, significant hardship in which a State might conceivably create a liberty interest." *Sandin v. Conner*, 515 U.S. 472, 486 (1995). In *Wilkinson,* a protected liberty interest

8

was created when the maximum security facility prohibited all human contact, had lights illuminated 24 hours a day, permitted exercise for only one hour a day, imposed indefinite placement with only annual review, and disqualified an otherwise eligible inmate for parole consideration. *Wilkinson,* 545 U.S. at 224. Mitchell has not alleged that his supermax placement was comparable. In fact, he alleges to have lost only 5 days of privileges, which is not a sanction that creates a liberty interest. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (loss of privileges for 14 days did not deprive prisoner of liberty interest).

Moreover, Mitchell's allegations indicate that he was given a copy of his charge, he was able to plead not guilty to the charge and explain his defense in writing, and he was afforded a hearing in which his punishment was reduced from ten days of loss of privileges to five days. [R. 22, PgID 109]. He was also afforded the opportunity to appeal this determination and was informed of the procedure to do so. [*Id.*, PgID 109-10]. The process he was afforded is similar to that which was upheld in *Wilkinson v. Austin*, and it should be found to be sufficient here. *See* 545 U.S. at 224-28.

### E.   Claims Arising from Vicarious Liability

Finally, Mitchelll claims that defendants Casey, Kunath, Greenfield, Reiss, Garcia, Wezner, and Williams were "negligent in supervising

9

subordinates." [R. 7, PgID 46-47]. However, "§ 1983 liability must be based on more than respondeat superior or the right to control employees." *Shehee v. Luttrell*, 199 F. 3d 295, 300 (6th Cir. 1999). Defendants are correct that Mitchell must allege facts that the supervisors encouraged or directly participated in offending conduct in order to state a claim, which Mitchell has not done. Thus, defendants should be granted summary judgment on these remaining claims.

### IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS GRANTING** defendants' motion for summary judgment **[52]**.


Dated: February 10, 2016            s/Elizabeth A. Stafford
Detroit, Michigan                   ELIZABETH A. STAFFORD
                                    United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any

further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 10, 2016.

                                            <u>s/Marlena Williams</u>
                                            MARLENA WILLIAMS
                                            Case Manager